# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

**NATIONAL LABOR RELATIONS BOARD**

      **Applicant,**

  **v.**                                         **Civil No.**

**JOSEPH MARANO**

      **Respondent.**

## MEMORANDUM IN SUPPORT OF APPLICATION FOR AN ORDER REQUIRING COMPLIANCE WITH ADMINISTRATIVE SUBPOENA DUCES TECUM

Congress has authorized the National Labor Relations Board ("Board"), by its General Counsel, to investigate unfair labor practice allegations upon the filing of a charge. See Sections 3(d) and 10(a) of the National Labor Relations Act, as amended ("Act") (29 U.S.C. Secs. 153(d) and 160(a)). The Board has filed an application with this Court seeking enforcement of a subpoena duces tecum the Board issued during the course of such an investigation. The Board files this Memorandum in Support of its Application for an Order Requiring Compliance with Administrative Subpoena Duces Tecum.

## FACTS

Cermak Fresh Markets operates a grocery store at 1541 Miller Park Way in Milwaukee, Wisconsin. Respondent is the Store Manager for Cermak Fresh Markets at this store. On May 14, 2013,[1] the Milwaukee Workers Organizing Committee ("Charging Party") filed an unfair labor practice charge against Cermak Fresh Markets in Case 30-CA-105150. On May 28, the Charging Party amended its charge. The first-

---

[1] All dates are 2013, unless otherwise stated.

amended charge in Case 30-CA-105150 alleges that since on or about May 5, Cermak Fresh Markets has interfered with, restrained, and coerced employees in the exercise of rights guaranteed by the Act by surveiling and discharging employees Roman Alvarez and Dulce Herrera for engaging in protected concerted activities in connection with planned activities of the Milwaukee Workers Organizing Committee, and by terminating Nancy Alba in order to discourage employees from engaging in such protected concerted activities. The Region began investigating the allegations, including requesting information from Cermak Fresh Markets. On June 7, the Employer submitted a position statement with a portion of the information the Region had requested. In it, Cermak Fresh Markets denied the allegations, stating that it had no knowledge whether any of the alleged discriminatees were engaged in or suspected of being engaged in any protected concerted or union activities prior to their discharge or layoff, and that each was discharged or laid off for legitimate business reasons. Cermak Fresh Markets asserted that: (1) Roman Alvarez and Dulce Herrera were two of seven employees laid off as part of a need to reduce payroll, which was in excess of 12 percent of sales; and (2) Nancy Alba was discharged because of performance issues.

Thereafter, the Region requested that Cermak Fresh Markets voluntarily provide additional evidence related to: (1) its claimed lack of knowledge of any protected, concerted or union activity by the three alleged discriminatees; and (2) its claimed legitimate, non-discriminatory reasons for taking adverse employment action against the three alleged discriminatees. The Employer refused to provide the additional evidence.

As a result, on June 25, the Board issued a subpoena duces tecum to the Store Manager for Cermak Fresh Markets, Joseph Marano, to "provide information and an

2

affidavit before a Board Agent."  The subpoena duces tecum seeks information relating to management's knowledge and response to any union and/or protected concerted activities, information concerning the alleged discriminatees, and information related to the proffered defenses to the allegations.  The subpoena was served on Joseph Marano at Cermak Fresh Markets' location in accordance with the Act and Section 102.113 of the Board's Rules and Regulations ("Board's Rules").

Section 102.31(b) of the Board's Rules provides in pertinent part that "[a]ny person served with a subpoena" can file a petition to revoke that subpoena on the grounds that "the evidence whose production is required does not relate to any matter under investigation or in question in the proceedings or the subpoena does not describe with sufficient particularity the evidence whose production is required, or if for any other reason sufficient in law the subpoena is otherwise invalid."   On July 2, Cermak Fresh Markets' attorney filed its Petition to Revoke Investigative Subpoena Duces Tecum with the Board.   On July 12, the Acting Regional Director issued an Order Referring Petition to Revoke Subpoenas Duces Tecum to the National Labor Relations Board.  On July 12, the undersigned filed an Opposition to the Petition to Revoke Investigatory Subpoenas Duces Tecum.  On July 16, Cermak Fresh Markets filed a Reply Brief to Region 30 of the NLRB's Opposition to the Petition to Revoke Investigative Subpoenas Duces Tecum. On July 24, the undersigned filed a Supplemental Reply to the Petition to Revoke.  On October 23, the Board issued its Order denying the Petition to Revoke.

On November 18, the undersigned sent Cermak Fresh Markets' attorney a letter inquiring as to whether Joseph Marano was going to comply with the subpoena duces

tecum issued to him. On November 20, Cermak Fresh Markets' attorney sent the undersigned an email stating that Respondent was not going to comply.

<u>LEGAL AUTHORITY</u>

**1.    The Board's Authority to Issue Investigative Subpoenas**

The Board's authority to investigate is granted by Congress and laid out in Section 11(1) of the Act. Section 11 states in pertinent part, "The Board…shall at all reasonable times have access to, for the purpose of examination, and the right to copy any evidence of any person being investigated or proceeded against that relates to any matter under investigation or in question. The Board…shall upon application of any party to such proceedings, forthwith issue to such party subpoenas requiring the attendance and testimony of witnesses or the production of any evidence in such proceeding or investigation requested in such application…." The Board's investigative power is very broad and it may issue subpoenas requiring the production of evidence and testimony during the investigatory states of an unfair labor practice proceeding. *NLRB v. North Bay Plumbing, Inc.,* 102 F.3d 1005, 1007 (9th Cir. 1996) *citing NLRB v. Carolina Food Processors Inc.*, 81 F.3d 507, 514 (4th Cir. 1996). The Board's authority includes the power to require responses to written questions, *EEOC v. Bay Shipbuilding Corp.*, 668 F.2d 304, 313 (7th Cir. 1981), compel the production of documents, *NLRB v. G.H.R. Energy Corp.*, 707 F.2d 110, 113-114 (5th Cir. 1982), and to require oral testimony concerning the matters in question, *NLRB v. Thayer*, 201 F.Supp 602, 604 (D. Mass. 1962). The subpoena power of an administrative agency has been compared to that of a grand jury, which "can investigate merely on suspicion that the law is being violated, or

4

even just because it wants assurance that it is not." *United States v. Powell*, 379 U.S. 48, 57 (1964), *quoting United States v. Morton Salt Co.*, 338 U.S. 632, 642-643 (1950).

The applicable test for determining the appropriateness of an administrative subpoena is: 1) whether the inquiry is within the authority of the issuing agency; 2) whether the request is too indefinite; and 3) whether the information sought is reasonably relevant. *United States v. Morton Salt Company*, supra at 652. "The 'relevancy' standard used in determining whether an administrative subpoena should be enforced is a very broad one." *NLRB v. Rohlen*, 385 F.2d 52, 55-56 (7th Cir. 1967). The test of materiality and relevance of a subpoenaed document is whether the document "might throw light" on the inquiry or investigation. *Foster v. United States*, 265 F.2d 183 (2nd Cir. 1959), cert denied 360 U.S. 912 (1959); *United States v. Egenberg*, 443 F.2d 512 (3rd Cir. 1971); *United States v. Ryan*, 455 F.2d 728 (9th Cir. 1972). Courts construe the term "relevance" in the context of evaluating the appropriateness of administrative subpoenas because the "broad exercise of investigative power is necessary if the agencies are to fulfill the public interest purposes for which they were established." *NLRB v. Stanley Friedman*, 352 F.2d 545, 547 (3d Cir. 1965). See also *United States v. Morton Salt Co.*, supra. Duly issued subpoenas are thus entitled to enforcement provided that the subpoenas are not unreasonably burdensome and that the information is not "plainly incompetent or irrelevant to any lawful purpose." *Endicott Johnson Corp. v. Perkins*, 317 U.S. 501, 509 (1943).

In this case, the Board subpoenaed Respondent to produce documents and provide an affidavit because Respondent has information that, under the above standard, is relevant to the investigation into whether Cermak Fresh Markets committed the alleged

5

unfair labor practices, including whether it had knowledge of statutorily protected activity, and/or whether it had legitimate, non-discriminatory rationales for the actions it took against the alleged discriminatees. It is important for this Court to note that Cermak Fresh Markets has already administratively challenged the appropriateness of the subpoena when it filed its Petition to Revoke with the Board. The Board, however, rejected those arguments and, therefore, concluded that the subpoena duces tecum meets the above test and is reasonably relevant and not burdensome.

**2.    Court's Authority to Order Enforcement**

Where it is determined that a party must comply with a subpoena, the Board lacks independent authority to enforce the subpoena and, therefore, must seek enforcement in a United States district court. See generally *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 49 (1938). Pursuant to Section 11(2) of the Act, 29 U.S.C. Sec. 161(2), in cases of refusal to obey Board subpoenas:

> [A]ny United States district court . . . within the jurisdiction of which the inquiry is carried on or within the jurisdiction of which said person guilty of contumacy or refusal to obey is found or resides or transacts business, upon application by the Board[,] shall have jurisdiction to issue . . . an order requiring such person to appear before the Board . . to produce evidence . . . [or] to give testimony.

The burden on the party seeking to evade compliance with a subpoena is not a meager one. The party must show that the subpoena serves purposes outside the realm of the authority of the issuing agency. If this threshold is not reached, the court should enforce the subpoena. *NLRB v. Fraizer*, 966 F.2d 812, 819 (3rd Cir. 1992).

6

### 3.     Nature of District Court Enforcement Proceedings

#### a.     Filling of an Application

Consistent with the authorization contained in Section 11(2) of the Act and the need to avoid unnecessary delay of the Board's processes, the Board's practice has long been to file an application with the district court to enforce the Board's subpoenas. Section 11(2) specifically provides that a subpoena-enforcement proceeding is commenced by an application, not by complaint or motion. As explained long ago by the Sixth Circuit in *Goodyear Tire & Rubber Co. v. NLRB*, 122 F.2d 450 (6th Cir. 1941), in a case challenging the Board's failure to serve a summons and complaint in a subpoena-enforcement proceeding:

> [T]he proceedings plainly are of a summary nature not requiring the issuance of process, hearing, findings of fact, and the elaborate process of a civil suit. We think the procedure to be followed in the district court is controlled by Section 11(2) of the Act . . . It is significant that the statute calls for an "application" rather than a petition, for an "order" rather than a judgment, and that it details no other procedural steps. Obviously, if the enforcement of valid subpoenas, the issuance of which is a mere incidence in a case, were to require all of the formalities of a civil suit, the administrative work of the Board might often be subject to great delay. We think that such was not the intention of Congress.

*Id.* at 451; see also *NLRB v. Interstate Dress Carriers, Inc.*, 610 F.2d 99, 112 (3rd Cir. 1979).

In recognition of the special nature of the Board's subpoena-enforcement proceedings, courts have not required that the Board strictly comply with the requirements of all matters of civil procedure. Federal Rule of Civil Procedure 81(a)(5) provides the authority by which district court judges, in agency subpoena-enforcement

7

proceedings, allow a less formal application of the federal rules of civil procedure.[2]  See *United States v. Markwood*, 48 F.3d 969, 982 (6th Cir. 1995)(most of the Federal Rules of Civil Procedure are inapplicable to proceedings for enforcement of an administrative subpoena).

### b.    The Court's Summary Role

The role of federal courts in administrative subpoena enforcement proceedings is "sharply limited." *EEOC v. Tempel Steel Co.*, 814 F.2d 482, 485 (7th. Cir.1987).  Such proceedings are designed to be summary in nature.  *NLRB v. Fraizer*, supra at 817-818; *see also* *EEOC v. United Air Lines Inc.*, 287 F.3d 643, 649 (7th Cir. 2002).  The Court does not consider the merits of the underlying charge. *See* *EEOC v. Shell Oil Co.*, 466 U.S. 54, 72 n. 26 (1984).  It is well established that, in a Section 11(2) enforcement case, the district court should treat the Board's application as a dispositive matter, and not as a pre-trial discovery matter.  *NLRB v. Frazier*, supra at 817-818.  For, as one court recognized, "[o]therwise, the enforcement proceedings may become a means for thwarting the expeditious discharge of the agency's responsibilities." *NLRB v. Interstate Dress Carriers, Inc.*, supra at 112. "[T]he question of whether or not to enforce the subpoena is the only matter before the court.  The court's decision seals with finality the district court proceeding and is subject to appellate review."  *NLRB v. Frazier*, supra at 818.  Indeed, the limited nature of Section 11(2)'s jurisdictional grant to the district court is a consequence of Congress' recognition of the importance of providing the Board with

---

[2] Fed. R. Civ. P. 81(a)(5) provides, in pertinent part, that the federal rules of civil procedure apply to agency subpoena-enforcement proceedings, except as otherwise provided by statute, rules of the district court, or by order of the court in the proceeding.

a means of prompt enforcement of its subpoenas so that it can effectively carry out its statutory mission.

Because Section 11 of the Act plainly provides that the Board's subpoena cases are to be commenced by application with a limited, summary review by a district court, it follows that this Court should consider the Board's application for an order requiring compliance with its subpoena, and make a prompt disposition so as to permit the resumption of the Board's pending administrative investigation.

## CONCLUSION

For the reasons set forth above, the Board acted within its statutory authority in issuing the investigative subpoena duces tecum to Respondent in this case. The subpoena duces tecum seeks testimony and documentation that is relevant and necessary to the Board's investigation into whether Cermak Fresh Markets committed the alleged unfair labor practices. As a result, all of the criteria are met for the Court to issue an Order requiring Respondent to comply with the subpoena duces tecum.

Signed at Milwaukee, Wisconsin, this 26th day of November, 2013.

NATIONAL LABOR RELATIONS BOARD

BY:  Richard Griffin
     General Counsel


/s/ Andrew S. Gollin_____
Andrew S. Gollin, Esq.
Attorney for Applicant
National Labor Relations Board,
Subregion 30
310 West Wisconsin Avenue, Suite 450W
Milwaukee, WI 53203-221

9

10