**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

**NATIONAL LABOR RELATIONS BOARD,**

    Applicant,

    -vs-                                 Case Nos. 13-mc-68, 13-mc-69

**JOSEPH MARANO, GREGORY LAZARIOTIS,**

    Respondents.

## DECISION AND ORDER

These actions are applications by the National Labor Relations Board for an order directing compliance with subpoenas that were issued to Joseph Marano (Subpoena Duces Tecum B-712511) and Gregory Lazariotis (Subpoena Duces Tecum B-712512). Marano is the manager and Lazariotis is the assistant manager for Cermak Fresh Markets, located at 1541 Miller Park Way in Milwaukee. The subpoenas relate to an unfair labor practice charge filed by the Milwaukee Workers Organizing Committee, alleging that Cermak surveilled and discharged certain employees for engaging in protected activities.

Under the National Labor Relations Act, the Board has the authority to issue subpoenas in aid of an investigation, but lacks the power to enforce those subpoenas. 29 U.S.C. §§ 161(1), (2) (also known as section 11 of the Act). Thus, when the respondent refuses to comply (and also where, as here, the Board denies the respondent's petition to revoke), the Board's practice is to file an "application" for

enforcement with the district court. § 161(2) ("any district court of the United States . . . within the jurisdiction of which the inquiry is carried on . . . upon application by the Board shall have jurisdiction to issue to such person an order requiring such person to appear before the Board . . . to give testimony touching the matter under investigation or in question . . ."). These proceedings are intended to be summary in nature. "It is significant that the statute calls for an 'application' rather than a petition, for an 'order' rather than a judgment, and that it details no other procedural steps. Obviously, if the enforcement of valid subpoenas, the issuance of which is a mere incidence in a case, were to require all of the formalities of a civil suit, the administrative work of the Board might often be subject to great delay. We think that such was not the intention of Congress, . . ." *Goodyear Tire & Rubber Co. v. NLRB*, 122 F.2d 450, 451 (6th Cir. 1941); *see also NLRB v. Interstate Dress Carriers, Inc.*, 610 F.2d 99, 112 (3d Cir. 1979) ("a district court should, in a [§ 11(2)] enforcement case, act summarily").

The Board's subpoenas should be enforced if the information sought is relevant to its investigation and is described with sufficient particularity. *NLRB v. Carolina Food Processors, Inc.*, 81 F.3d 507, 510 (4th Cir. 1996); *see also Interstate Dress Carriers*, 610 F.2d at 111 ("In order to obtain enforcement, agencies must show that the subpoena is for subject matter relevant to an inquiry within their statutory mandate"). If the subpoenaed material "touches a matter under investigation, it is within the scope of section 11(2) even though the material may not be considered 'evidence' as the term is employed in the courtroom." *NLRB v. Rohlen*, 385 F.2d 52,

57 (7th Cir. 1967). In other words, relevance is analyzed "in terms of the investigation rather than in terms of evidentiary relevance. . . . The term 'relevant' is 'generously construed' to 'afford[] the [agency] access to virtually any material that might cast light on the allegations against the employer.'" *EEOC v. Fed. Exp. Corp.*, 558 F.3d 842, 854 (9th Cir. 2009).[1] Indeed, the subpoena power of an administrative agency has been compared to the power of a grand jury, which can "investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." *United States v. Powell*, 379 U.S. 48, 57 (1964) (quoting *United States v. Morton Salt Co.*, 338 U.S. 632, 642-43 (1950)). Ultimately, the "burden on the party to whom the subpoena is addressed is not a meager one. It must come forward with facts suggesting that the subpoena is intended solely to serve purposes outside of the jurisdiction of the issuing agency." *Interstate Dress Carriers* at 112 (internal citations omitted).

The respondents fall well short of meeting this heavy burden. For example, the respondents argue that information about employees not named in the charge is irrelevant, but at the same time, they concede that the Board may be seeking evidence of comparative employment situations. Such evidence is plainly relevant to the Board's investigation. If Cermak treated similarly situated employees better than those

---

[1] Cases discussing the subpoena power of the EEOC are relevant in this context, and vice versa. *EEOC v. Children's Hosp. Med. Ctr. of N. Cal.*, 719 F.2d 1426, 1430 (9th Cir. 1983) (noting that section 11 of the Act is "made expressly applicable to EEOC investigations under 42 U.S.C. § 2000e-9").

that were named in the charge, this would suggest that Cermak acted with a discriminatory motive. *See, e.g., Lucas v. Chi. Transit Auth.*, 367 F.3d 714, 728 (7th Cir. 2004) (plaintiff can establish a prima facie case of discrimination by showing that "the employer treated similarly situated employees outside of the protected class more favorably"). More generally, the respondents seem to suggest that the Board should just take Cermak's denials at face value. To the contrary, when a charge is filed, the Board has a duty and an obligation to gather evidence to test those assertions. The respondents' complaint that the Board is engaging in an unlawful fishing expedition rings hollow in this context. *Morton Salt*, 338 U.S. at 363-64 ("We must not disguise the fact that sometimes, especially early in the history of the administrative tribunal, the courts were persuaded to engraft judicial limitations upon the administrative process. The courts could not go fishing, and so it followed neither could anyone else. Administrative investigations fell before the colorful and nostalgic slogan 'no fishing expeditions'").

The respondents also complain that the Board has refused to provide evidence of a prima facie case against Cermak. The Board's refusal, or alleged refusal, to share some or all of its evidence with Cermak is not a relevant factor for the Court's consideration. It is enough to say that the evidence requested is described with sufficient particularity. Moreover, there is no "probable cause" requirement in the agency subpoena context. *United States v. Golden Valley Elec. Ass'n*, 689 F.3d 1108, 1115-16 (9th Cir. 2012); *see also EEOC v. United Air Lines, Inc.*, 287 F.3d 643, 652

n.5 (7th Cir. 2002) ("In order to obtain enforcement of an administrative subpoena, the EEOC usually does not have to prove either probable cause or reasonable cause to believe that the charge of discrimination is true. Indeed, the purpose of the investigation is to determine whether probable cause or reasonable cause to bring a discrimination charge exists") (quoting *EEOC v. K-Mart Corp.*, 694 F.2d 1055, 1066 (6th Cir. 1982)); *EEOC v. A.E. Staley Mfg. Co.*, 711 F.2d 780, 786 (7th Cir. 1983) ("The purpose of this subpoena is to determine whether probable cause exists. To require the EEOC to demonstrate probable cause before the subpoena issues would impose an unfair obligation on the agency").

Finally, the respondents note that they have cooperated with the Board's investigation by producing over 40 pages of relevant documents. Obviously, the Board wants more, and it is entitled to more. If the respondents have no further evidence, they can testify as such.

The Board's applications for enforcement are **GRANTED**. The respondents must comply with the Board's subpoenas.

Dated at Milwaukee, Wisconsin, this 24th day of January, 2014.

                                         **BY THE COURT:**

                                         */s/ Rudolph T. Randa*
                                         **HON. RUDOLPH T. RANDA**
                                         **U.S. District Judge**